# EXHIBIT A – 1 OF 3

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| SERVICE BY AIR, INC., | ) | |
| | ) | 2014CH04170 |
| Plaintiff, | ) | CALENDAR/ROOM 14 |
| vs. | ) | TIME 00:00 |
| | ) | Injunction |
| PHOENIX CARTAGE AND AIR | ) | Case No. _____ |
| FREIGHT, LLC; PHILIPPE GABAY; and | ) | |
| RADIANT LOGISTICS, INC. | ) | |
| | ) | |
| Defendants. | ) | |

### VERIFIED COMPLAINT FOR BREACH OF CONTRACT AND OTHER RELIEF

NOW COMES **Service By Air, Inc.** ("SBA"), Plaintiff herein, by and through its

attorneys, Tishler & Wald, Ltd., and for its Verified Complaint for Breach of Contract and Other

Relief against **Phoenix Cartage and Air Freight, LLC** ("Phoenix"), **Philippe Gabay**

("Gabay") and **Radiant Logistics, Inc.** ("Radiant"), Defendants herein, respectfully states as

follows:

### Allegations Common to All Counts
### Parties

1.      Plaintiff, SBA, is and was at all times relevant hereto, a corporation organized

under the laws of New York and having its principal place of business at 222 Crossways Park

Drive, Woodbury, New York 11797 and maintaining agent offices, *inter alia*, at 811 Thorndale

Avenue, Bensenville, IL 60106.

2.      Defendant, Phoenix, is and was at all times relevant hereto, a limited liability

company organized under the laws of Pennsylvania and having its principal place of business at

514 Kaiser Drive, Folcroft, PA 19032.

1



4.    Defendant, Radiant, is and was at all times relevant hereto, a Delaware corporation with its headquarters at 405 114th Ave SE, Bellevue, Washington and maintaining offices, *inter alia*, at 610 Supreme Drive, Bensenville, IL.

**Jurisdiction and Venue**

5.    This Court has jurisdiction over this matter pursuant to Paragraph 24 of the Sales Agent Agreement ("Agreement") between SBA and Phoenix, a copy of which is attached hereto as **Exhibit A** and made a part hereof, wherein Phoenix and SBA expressly agreed to the application of Illinois law, jurisdiction and venue of any court of jurisdiction in the City of Chicago, IL.

6.    This Court also has jurisdiction over this matter pursuant to 735 ILCS §5/2-209 since both SBA and Radiant maintain offices in Illinois and do business in Illinois.

7.    Furthermore, this Court has jurisdiction over this matter pursuant to 735 ILCS §5/2-209 since Gabay travelled to Illinois on several occasions to visit various SBA customers, including but not limited to idX Chicago and Echo Global Logistics, each with offices in downtown Chicago, Illinois and attended the Global Shop Trade Show in Chicago as an SBA agent as recently as 2013.

8.    Venue is proper in this Court pursuant to Paragraph 24 of the Agreement which fixes venue in any court of jurisdiction in the City of Chicago, IL and otherwise proper under 735 ILCS §5/2-101.

**Introduction and Background**

9.    For over 40 years, SBA has been engaged in air freight shipping which includes international freight service and global logistics services for SBA customers.

10.     Over the past four decades, SBA has meticulously developed and maintained a high reputation for its service quality and reliability with its customers, who have enjoyed the benefit of SBA's proprietary freight forwarding software to achieve on time deliveries and innovative solutions to many international freight, freight shipping and global logistics problems.

11.     SBA's programs and services are only sold, provided and serviced either by SBA employees or by authorized agents employing trained sales, operations and customer service personnel fully knowledgeable of SBA's proprietary procedures and programs.

*The Sales Agent Agreement and Relationship Between SBA and Phoenix/Gabay*

12.     On or about October 1, 2009, SBA entered into the Sales Agent Agreement ("Agreement") with Phoenix for representation of SBA in certain territory as defined by the Agreement.

13.     The Agreement has been amended and extended from time to time and expired on its own terms on February 28, 2014.  Exhibit A, supra.

14.     Upon information and belief, Phoenix is a Pennsylvania limited liability company whose only members are Gabay and his wife, Paige Gabay, each of whom hold a 50% membership stake in the LLC, with Gabay being the Managing Member of the LLC.

15.     At all times relevant hereto, Gabay represented himself to SBA as the President and Managing Member of Phoenix and signed all documents and agreements on behalf of Phoenix, including the Agreement herein.

16.     Upon information and belief, Gabay was solely responsible for the day to day operations, contractual relationships and management of Phoenix.

17.     At all times relevant hereto, all of SBA's dealings with Phoenix were handled by Gabay who represented himself as the "face" of Phoenix.

3

18.     Gabay used Phoenix as a mere shell in his dealings with SBA.

19.     For all intents and purposes, Phoenix was the alter ego of Gabay.

20.     Furthermore, SBA treated Gabay and Phoenix as the same entity for all intents and purposes.

21.     The Agreement is replete with references to "Sales Agent" in the individual capacity, implying that the Agreement was to be binding upon not only Phoenix but also Gabay. To wit:

    a.  Paragraph 14(B) of the Agreement provides that "Sales Agent further agrees that the use by a spouse or member of Sales Agent's immediate family...of confidential information...;"

    b.  Paragraph 18 covers death of a Sales Agent;

    c.  Paragraph 21 states that "Service By Air, Inc. shall not exercise its right of first refusal in the sale of the Sales Agent's operations to a family member who otherwise qualifies in accordance with this Agreement;"

    d.  Paragraph 22 states that "Sales Agent acknowledges that it shall be deemed a breach of this Agreement if Sales Agent's spouse or other member of Sales Agent's immediate family shall engage in any conduct prohibited in this Agreement;"

    e.  Paragraph 33 of the Agreement states that "'Sales Agent' includes all the signatories to this Agreement, except SBA, regardless of whether such signatories are one or more persons, corporations or other legal entities."

4

       f.   Paragraph 35 states: "All Sales Agent signatories to this contract shall be jointly and severally liable for the performance of all the terms, covenants and conditions hereof."

See Agreement, Exhibit A.

22.    Many accounts Phoenix/Gabay was charged with servicing under the Agreement were accounts which SBA originated and cultivated prior to the Agreement's inception. See, Affidavit of Marty Capuano, Chief Financial Officer of SBA, verifying the SBA customers originated by SBA is attached hereto as **Exhibit B** and made a part hereof. A portion of these accounts were expanded by Phoenix/Gabay. Exhibit B, id.

23.    Phoenix/Gabay expanded the pre-existing customer list and generated many minor accounts under the Agreement. Exhibit B.

24.    The Agreement contains a provision restricting Phoenix/Gabay from directly or indirectly participating, engaging or having any interest in any freight forwarding business in the defined Philadelphia metropolitan area. See Paragraph 22 of Agreement, previously attached hereto as Exhibit A and made a part hereof.

25.    The Agreement also contains a provision granting SBA an irrevocable first right and option to purchase Phoenix's intangible assets and any employment contracts and leases on the same terms and conditions as any bona fide purchaser, exercisable by SBA within thirty (30) days after receipt of an offer for purchase containing all terms of the proposed sale and the identity of the proposed purchaser. Exhibit A, at ¶21.

26.    Furthermore, the Agreement contains a provision requiring the maintaining of confidentiality and non-disclosure by Phoenix/Gabay which states as follows:

5

> "Sales Agent recognizes that the names 'SBA', 'Service By Air' and "Service by Air, Inc. are associated with distinctive methods and techniques of doing business which have been developed as a result of the expenditures of substantial time and money, and that such methods and techniques are only disclosed to members of the SBA Network and are considered confidential and trade secrets. Sales Agent further recognizes that disclosure of SBA's methods, techniques, confidential information or trade secrets would result in substantial injury to SBA. Sales Agent and all employees shall not at any time directly or indirectly furnish to any person not directly affiliated with the SBA Network any information as to SBA's methods or techniques, SBA customer lists, or any information pertaining to operations or procedures which have been supplied by SBA…"

Agreement, Exhibit A at ¶14.

27.     Paragraph 14(C) of the Agreement also provides for the imposition of the non-breaching party's attorneys' fees and costs on the breaching party.

### *Expiration of the Agreement and Termination of the SBA—Phoenix/Gabay Relationship*

28.     In or around January 2014, Gabay approached SBA with certain demands regarding termination of the Agreement, renewal of the agency or the acquisition of Phoenix.

29.     Throughout January and February 2014, the SBA and Phoenix/Gabay were engaged in discussions.

30.     At approximately 5:00 p.m. on February 28, 2014, Gabay shut down SBA's remote access to the SBA software and information on the Phoenix computer system. See Affidavit of Mike D'Iorio, SBA's IT Manager, attached hereto as **Exhibit C** and made a part hereof.

31.     The Agreement did not expire until 11:59 p.m. on Friday, February 28, 2014.

### *The Acquisition of Phoenix by Radiant*

32.     Upon information and belief, on the morning of Saturday, March 1, 2014, Radiant began soliciting and hiring Phoenix employees and soliciting employees of another SBA agency.

See Affidavit of Ron Lynch, Vice President of Operations of SBA ("Lynch Affidavit"), attached hereto as **Exhibit D** and made a part hereof ("Lynch Affidavit"). Also see Affidavit of Cheryl Hollander ("Hollander Affidavit"), attached hereto as **Exhibit E** and made a part hereof, indicating that she herself was solicited by Radiant's Founder and CEO, Bohn Crain, and confirming that Radiant was well aware of the Agreement and its non-compete provisions.

33.     On Monday, March 3, 2014, Radiant issued a press release announcing its acquisition of select customer relationships of Phoenix and purchase of its assets along with stock payments to Gabay ("Acquisition") and the hiring of Gabay as Vice President of Business Development for Radiant's Mid-Atlantic region. A copy of the press release is attached hereto as **Exhibit F** and made a part hereof.

34.     As recently as March 6, 2014, SBA has been informed by one of its customers that Radiant has contacted said customer requesting a change of the consignee on a shipment predating March 1, 2014 from SBA to Radiant, which would, in effect, strip SBA of payment for a shipment it is entitled to. See correspondence between Radiant and Cordray Corp. attached hereto as **Exhibit G** and made a part hereof. Also, see Capuano Affidavit, Exhibit B.

## COUNT I—BREACH OF CONTRACT AGAINST PHOENIX, GABAY AND RADIANT
### (Paragraph 21 of Agreement—Right of First Refusal)

35.     SBA incorporates and restates the allegations of Paragraphs 1 through 34 of this Verified Complaint as though fully set forth herein.

36.     Paragraph 21 of the Agreement gives SBA the irrevocable first right and option to purchase Phoenix's intangible assets and any employment contracts and leases on the same terms and conditions as any bona fide purchaser, exercisable by SBA in writing within thirty (30) days of its receipt of a copy of the offer to purchase, which offer must contain all the terms of the proposed sale and the identity of the proposed purchaser. Agreement, Exhibit A at ¶21.

37.     Paragraph 21 of the Agreement goes on to state that "any sale or attempted sale without first giving SBA the right of first refusal shall be void and of no force or effect." Exhibit A.

38.     Upon information and belief, Phoenix/Gabay were attempting to sell Phoenix's assets and SBA customer relationships to Radiant well prior to the expiration of the Agreement.

39.     Upon information and belief, Gabay travelled to Radiant's corporate headquarters in late January or early February, 2014, in furtherance of the negotiations on the Acquisition.

40.     At no point in time did SBA receive any copy of the offer to purchase from Phoenix/Gabay as required by Paragraph 21 of the Agreement.   See Capuano Affidavit, Exhibit B.  Affidavit of Hann Livingston, SBA's Chief Operating Officer ("Livingston Affidavit"), attached hereto as **Exhibit H** and made a part hereof; and Affidavit of Rosalind Poliseno, President of SBA, attached hereto as **Exhibit I** and made a part hereof.

41.     Phoenix/Gabay's failure to honor SBA's right of first refusal constitutes a breach under the Agreement.

42.     SBA has suffered and will continue to suffer damages as a result of said breach.

43.     Since any sale or attempted sale without first giving SBA the right of first refusal shall be void and of no force and effect, the Acquisition must be voided.

44.     Radiant is a necessary party to this Count in order to effect the remedy sought and an appropriate party since it knew of the Agreement. Exhibit E.

**WHEREFORE,** Plaintiff SBA demands judgment against Defendant Phoenix and Defendant Gabay for damages, a voiding of the Acquisition, and any other and further relief this Court deems appropriate.

## COUNT II—BREACH OF CONTRACT AGAINST PHOENIX & GABAY
### (Paragraph 22—Covenant Not to Compete)

45.     SBA incorporates and restates the allegations of Paragraphs 1 through 44 of this Verified Complaint as though fully set forth herein.

46.     Paragraph 22 of the Agreement prohibits Phoenix, during the term of and for three (3) years following termination of the Agreement from directly or indirectly participating, engaging or having any interest in any freight forwarding business in the Philadelphia Metropolitan Area. Exhibit A.

47.     Phoenix/Gabay violated the non-compete provisions of Paragraph 22 of the Agreement when Gabay became Vice President of Business Development at Radiant for a territory including the Phoenix area. See e.q., copy of press release, Exhibit F.

48.     Phoenix/Gabay violated the non-compete provisions of Paragraph 22 of the Agreement when Phoenix/Gabay sold Phoenix's assets to Radiant and acquired an interest in Radiant.[1] Exhibit F.

49.     SBA was and continues to sustain damages as a result of Phoenix/Gabay's breach of Paragraph 22 of the Agreement.

**WHEREFORE**, Plaintiff SBA demands judgment against Defendants Phoenix and Gabay enjoining their continued violation of the Agreement, an award of damages for their breach and for any other and further relief this Court deems appropriate.

## COUNT III—BREACH OF CONTRACT AGAINST PHOENIX/GABAY
### (Paragraph 14—Confidential Information and Non-Disclosure)

50.     SBA incorporates and restates the allegations of Paragraphs 1 through 49 of this Verified Complaint as though fully set forth herein.

---

[1] Since SBA has not been privy to all of the details of the Acquisition or how it was structured, it is without sufficient knowledge as to whether Phoenix and/or Gabay now has interest(s) in Radiant as part of the Acquisition. It is clear however that Gabay is directly involved with Radiant as V.P. of Business Development.

9

51.     Phoenix/Gabay breached Paragraph 14 of the Agreement by disclosing SBA's distinctive methods, techniques of doing business, trade secrets and confidential information to Radiant, by, *inter alia*, maintaining access to SBA's software and data after 5:00 p.m. Friday, February 28, 2014.

52.     Phoenix/Gabay breached Paragraph 14 of the Agreement by using, either directly or indirectly, confidential information or trade secrets or methods and techniques of doing business learned from SBA after the expiration of the Agreement.

53.     Phoenix/Gabay breached Paragraph 14 of the Agreement by shutting down SBA's remote access to its own computer system before expiration of the Agreement for the purpose of misusing the confidential information.

54.     SBA has been damaged by Phoenix/Gabay's breach of Paragraph 14 of the Agreement.

**WHEREFORE,** Plaintiff SBA requests the entry of judgment against Defendants Phoenix and Gabay enjoining violation of the Agreement, and mandating (a) return of all SBA software and data and stating under oath, (b) an award of damages resulting from the breach, (c) an award of SBA's costs and attorneys' fees, and (d) any other and further relief this Court deems appropriate.

### COUNT IV—Tortious Interference with Contract Against Radiant

55.     SBA incorporates and restates the allegations of Paragraphs 1 through 54 of this Verified Complaint as though fully set forth herein.

56.     Phoenix/Gabay had a contractual relationship with SBA pursuant to the Agreement.

57.     Radiant knew of the contractual relationship between SBA and Phoenix/Gabay. Exhibit A.

58.     On or about March 1, 2014, Radiant solicited and hired Phoenix employees and solicited an employee of another SBA agency. See Lynch Affidavit and Hollander Affidavit, previously attached hereto as Exhibits D and E respectively.

59.     During the solicitation of Cheryl Hollander, an employee of another SBA agency, Bohn Crain, CEO of Radiant explained that the reason Gabay was not contacting her directly in order to discuss her possibly working for Radiant was due to the existence of non-compete limitations on Gabay.  See Hollander Affidavit.

60.     Upon information and belief, Radiant was aware of the other terms of the Agreement as part of the due diligence it exercised in the Acquisition.

61.     Defendant Radiant, who is not a party to the Agreement, intentionally and without justification interfered with SBA's contract with Phoenix/Gabay by causing and aiding Phoenix/Gabay to breach the Agreement by, *inter alia*, failing to honor SBA's irrevocable right of first refusal, hiring Gabay as V.P. of Business Development prior to the expiration of his non-compete obligations and otherwise using confidential information, customer lists, proprietary SBA methods and techniques and trade secrets improperly disclosed by Phoenix/Gabay and attempting to misappropriate payment for SBA shipments.

62.     SBA has been damaged by Radiant's conduct.

**WHEREFORE**, Plaintiff SBA requests the entry of judgment against Defendant Radiant enjoining Radiant from using any SBA datum and enjoining Radiant from employing Gabay, an award of damages, and such other and further relief this Court deems appropriate.

11

## COUNT V—Civil Conspiracy Against Radiant, Phoenix and Gabay

63.     SBA incorporates and restates the allegations of Paragraphs 1 through 60 of this Verified Complaint as though fully set forth herein.

64.     Upon information and belief, sometime in late January or early February, 2014, Gabay travelled to Bellevue, Washington to meet with Radiant in furtherance of negotiations on the Acquisition.

65.     Gabay and Phoenix knew of the obligations under the Agreement.

66.     Radiant knew of the non-compete covenant in the Agreement.

67.     Upon information and belief, Radiant knew of the remaining provisions of the Agreement as part of their due diligence in the Acquisition.

68.     Radiant and Phoenix/Gabay agreed to proceed with the Acquisition and hiring of Gabay as V.P. of Business Development in violation of the Agreement.

69.     Radiant and Phoenix/Gabay agreed to proceed with the Acquisition without providing to SBA the contractually mandated right of first refusal.

70.     Upon information and belief, Radiant and Phoenix/Gabay agreed to use confidential information and trade secrets obtained from SBA in violation of the Agreement.

71.     Radiant and Phoenix/Gabay's conduct was done in furtherance of their scheme to misuse SBA's proprietary information.

72.     SBA has been injured by the conduct of Radiant and Phoenix/Gabay since it has lost and continues to lose various customers, confidential information and trade secrets as a result of Radiant's and Phoenix/Gabay's conduct.

**WHEREFORE**, Plaintiff SBA requests the entry of judgment against Radiant and Phoenix Gabay, for the award of damages, including punitive damages, attorneys' fees, costs, etc., and the entry of any other and further relief this Court deems appropriate.

Dated:  March 10, 2014                          Respectfully submitted,
Chicago, Illinois

                                                **SERVICE BY AIR, INC.**

                                                By: _____
                                                        One of Its Attorneys

Bruce L. Wald
Alexander D. Kerr, Jr.
Inez K. Tremain
Natalia R. Griesbach
**TISHLER & WALD, LTD.** - #26508
200 S. Wacker Drive, Suite 3000
Chicago, IL 60606
P:  (312) 876-3800

SERVICE BY AIR, INC.

By: _____
　　　　　　One of Its Attorneys

Bruce L. Wald
Alexander D. Kerr, Jr.
Inez K. Tremain
Natalia R. Griesbach
**TISHLER & WALD, LTD.** - #26508
200 S. Wacker Drive, Suite 3000
Chicago, IL 60606
P: (312) 876-3800

## VERIFICATION

　　　　Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in the foregoing **Verified Complaint** are true and correct, except as to matters therein stated to be on information and belief, and as to such matters, the undersigned certifies as aforesaid that he/she verily believes the same to be true.

_Rosalin Poliseno_
　　　　　　　　　[name]

STATE OF New York }
　　　　　　　　　　} ss
COUNTY OF Nassau }

　　　　I, the undersigned, a Notary Public in and for the county and state aforesaid do hereby certify that the above named **Rosalin Poliseno** personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that he/she signed and delivered the said instrument as his/her own free and voluntary act for the uses and purposes therein set forth.

　　　　Given under my hand and notarial seal of this 8 day of March, 2014.

_Raquel galan_
　　　　　　　Notary Public

**RAQUEL GALAN**
Notary Public, State of New York
No. 01GA6281932
Qualified in Nassau County
Commission Expires May 13, 20 17

**VERIFICATION**

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in the foregoing **Verified Complaint** are true and correct, except as to matters therein stated to be on information and belief, and as to such matters, the undersigned certifies as aforesaid that he/she verily believes the same to be true.

_Rosalin Poliseno_
[name]

STATE OF _New York_  ss
COUNTY OF _Nassau_,

I, the undersigned, a Notary Public in and for the county and state aforesaid do hereby certify that the above named _Rosalin Poliseno_ personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that he/she signed and delivered the said instrument as his/her own free and voluntary act for the uses and purposes therein set forth.

Given under my hand and notarial seal of this _8_ day of _March_, 2014.

_Raquel Galan_
Notary Public

RAQUEL GALAN
Notary Public, State of New York
No. 01GA6281932
Qualified in Nassau County
Commission Expires May 13, 20 _17_

## EXHIBITS FOR COMPLAINT

**Exhibit A** – Sales Agent Agreement between SBA and Phoenix, as Amended

**Exhibit B** – Affidavit of Marty Capuano, Chief Financial Officer of SBA

**Exhibit C** – Affidavit of Mike D'Iorio, SBA's IT Manager

**Exhibit D** – Affidavit of Ron Lynch, Vice President of Operations of SBA

**Exhibit E** – Affidavit of Cheryl Hollander

**Exhibit F** – Radiant Press Release

**Exhibit G** – Correspondence between Radiant and Cordray Corp.

**Exhibit H** – Affidavit of Hann Livingston, SBA's Chief Operating Officer

**Exhibit I** – Affidavit of Rosalind Poliseno, President of SBA

## AMENDMENT TO SALES AGENT AGREEMENT

Amendment to Sales Agent Agreement made as of the 1st day of October, 2009 (the "Agreement"), between Service By Air, Inc. ("SBA"), a New York corporation and Phoenix Cartage and Air Freight, LLC, a Pennsylvania limited liability company ("Agent").

1.    In consideration of the mutual covenants and provisions herein contained and other good and valuable consideration, SBA and Agent hereby amend the Agreement as follows:

    A.  Section 2.  Term of Agreement, is revised as follows:

       (a)  The term of the Agreement is extended to September 30, 2012.

       (b)  The parties agree that the Agreement will annually automatically renew for additional one (1) year periods unless SBA and/or agent, Phoenix Cartage and Airfreight LLC, notifies other party thirty (30) days before each annual extension of its intention to terminate the Agreement.

    B.  Section 19 of the Agreement is amended by the addition of a new Subsection D which reads as follows:

       "SBA, and/or agent, may terminate the Agreement upon written notice to Agent thirty (30) days prior to each annual expiration date."

2.    Except as amended herein, the Agreement shall be and remain in full force and effect.

3.    This Amendment may be executed in counterparts all of which when taken together shall constitute an original document.

**IN WITNESS WHEREOF**, the parties hereto have executed this Amendment to Sales Agent Agreement as of August 15, 2011.

SBA:
Service By Air, Inc.

By: _____
      Hann Livingston, EVP

AGENT:
Phoenix Cartage and Air Freight, LLC

By: _____, President

AGENT

SBA

9/27 , 2011

EXHIBIT
A

## SECOND AMENDMENT TO OCTOBER 1, 2009 SALES AGENT AGREEMENT

THIS SECOND AMENDMENT is made as of this 30th day of September, 2013 (the "**Effective Date**"), between Service By Air, Inc. (herein referred to as "SBA" or "Service by Air") and Phoenix Cartage and Air Freight, LLC, (hereinafter referred to as "Sales Agent".).

### WITNESSETH:

A.    SBA and Sales Agent entered into a Sales Agent Agreement on October 1, 2009, as amended.

B.    SBA and Sales Agent desire to amend the Sales Agent Agreement in accordance with the provisions hereof.

NOW, THEREFORE, the parties hereto, intending to be legally bound, agree as follows:

1.    Section 2. Term of Agreement is revised by deleting subsection (b).

2.    The term of the Sales Agent Agreement shall be extended until November 30, 2013.

3.    Except and to the extent modified by this Second Amendment, the October 1, 2009 Sales Agent Agreement, as amended, shall continue unmodified and in full force and effect for the term set forth above. To the extent of any conflict between the terms of this Second Amendment (on the one hand) and the terms of the Sales Agent Agreement, and any prior amendments thereto (on the other), the terms of this Second Amendment shall govern and control.

IN WITNESS WHEREOF, the respective parties, with intent to be legally bound, execute this instrument as of the day and year first above written.

ATTEST/WITNESS:                          SERVICE BY AIR, INC.

By: _____              By: _____
Name: Hailie Sieven                          Paul Hann Livingston, Vice-President
Title: office + Special Projects Manager

By: _____              PHOENIX CARTAGE & AIR FREIGHT, LLC
Name: Rent Suffmer
Title: Mgr.                              By: _____
                                             Philippe Gabay

1

## THIRD AMENDMENT TO OCTOBER 1, 2009 SALES AGENT AGREEMENT

THIS THIRD AMENDMENT is made as of this 28th day of October, 2013 (the "**Effective Date**"), between Service By Air, Inc. (herein referred to as "SBA" or "Service by Air") and Phoenix Cartage and Air Freight, LLC, (hereinafter referred to as "Sales Agent".).

### WITNESSETH:

A.   SBA and Sales Agent entered into a Sales Agent Agreement on October 1, 2009, as amended.

B.   SBA and Sales Agent desire to amend the Sales Agent Agreement in accordance with the provisions hereof.

NOW, THEREFORE, the parties hereto, intending to be legally bound, agree as follows:

1.   The term of the Sales Agent Agreement shall be extended until January 31, 2014.

2.   Except and to the extent modified by this Second Amendment, the October 1, 2009 Sales Agent Agreement, as amended, shall continue unmodified and in full force and effect for the term set forth above. To the extent of any conflict between the terms of this Third Amendment (on the one hand) and the terms of the Sales Agent Agreement, and any prior amendments thereto (on the other), the terms of this Third Amendment shall govern and control.

IN WITNESS WHEREOF, the respective parties, with intent to be legally bound, execute this instrument as of the day and year first above written.

ATTEST/WITNESS:                    SERVICE BY AIR, INC.

By: _____        By: _____
Name: Hailie Steven                 Paul Hann Livingston, Vice-President
Title: office + Special Projects Manager


By: _____        PHOENIX CARTAGE & AIR FREIGHT, LLC
Name: _____        By: _____
Title: _____            Philippe Gabay

1

## FOURTH AMENDMENT TO OCTOBER 1, 2009 SALES AGENT AGREEMENT

THIS FOURTH AMENDMENT is made as of this 23rd day of December, 2013 (the "**Effective Date**"), between Service By Air, Inc. (herein referred to as "SBA" or "Service by Air") and Phoenix Cartage and Air Freight, LLC, (hereinafter referred to as "Sales Agent".).

### WITNESSETH:

A.    SBA and Sales Agent entered into a Sales Agent Agreement on October 1, 2009, as amended.

B.    SBA and Sales Agent desire to amend the Sales Agent Agreement in accordance with the provisions hereof.

NOW, THEREFORE, the parties hereto, intending to be legally bound, agree as follows:

1.    The term of the Sales Agent Agreement shall be extended until February 28, 2014.

2.    Except and to the extent modified by this Fourth Amendment, the October 1, 2009 Sales Agent Agreement, as amended, shall continue unmodified and in full force and effect for the term set forth above.  To the extent of any conflict between the terms of this Fourth Amendment (on the one hand) and the terms of the Sales Agent Agreement, and any prior amendments thereto (on the other), the terms of this Fourth Amendment shall govern and control.

IN WITNESS WHEREOF, the respective parties, with intent to be legally bound, execute this instrument as of the day and year first above written.

ATTEST/WITNESS:                          SERVICE BY AIR, INC.

By: _____              By: _____
Name: Crystal Archer                     Paul Hann Livingston, Vice-President
Title: Office Operations Manager


                                         PHOENIX CARTAGE & AIR FREIGHT,
                                         LLC
By: _____
Name: Beth Buckworth                     By: _____
Title: track mgr                             Philippe Gabay

## SALES AGENT AGREEMENT

**AGREEMENT**, made as of this 1ˢᵗ day of October, 2009, between Service By Air, Inc. (herein referred to as "SBA" or "Service By Air"), a New York corporation, having offices at 222 Crossways Park Drive, Woodbury, New York 11797 and Phoenix Cartage and Air Freight, LLC (hereinafter referred to as "Sales Agent") a Pennsylvania limited liability company, having its office at 438 Clairemont Road, Villanova, PA (the "Premises").

## WITNESSETH:

**WHEREAS**, SBA is engaged in the shipper's door to receiver's door freight and ancillary transportation business, including transportation of domestic and international freight for SBA customers as a freight transportation company; and

**WHEREAS**, SBA has established a high reputation with the public/business community as to the quality of its services and reliability marketed under the SBA name (marks), which said high reputation and goodwill has been and continues to be a unique benefit to SBA and its agencies; and

**WHEREAS**, SBA's programs and services are only sold, provided and serviced by authorized agents employing trained sales, operations and customer service personnel fully knowledgeable with SBA's procedures and programs; and

Sales Agent _____ 9/22 _____ 2009

SBA _____ 9/22/09

**WHEREAS**, Sales Agent appointed by SBA is responsible to SBA Corporate and is required to adhere to (i) SBA's standard operating system for all of SBA's customers worldwide, and (ii) all SBA corporate policies, procedures and directives; and

**WHEREAS**, the success of both parties to this Agreement and of other authorized agencies is directly affected by the business conduct of all agents using the SBA marks in the freight transportation business, and Sales Agent recognizes that adherence to the terms of this Agreement is a matter of mutual importance and consequences to Sales Agent, to SBA and to all other agencies; and

**WHEREAS**, SBA desires to appoint Sales Agent and Sales Agent desires to accept such appointment, with the powers and authority herein set forth.

**NOW, THEREFORE**, in consideration of the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties do hereby agree as follows:

1. **APPOINTMENT OF SALES AGENT**

Sales Agent is hereby appointed on a non-exclusive basis to sell and service customers in the territory set forth on **Exhibit "A"**. SBA has the right to appoint other sales and service agents in Sales Agent's area.

This Agreement allows Sales Agent to engage in the domestic freight sales and ancillary transportation services utilizing the trade name and mark "SBA" or "Service By Air" or "Service By Air, Inc." subject to the terms and conditions specified herein. All

Sales Agent

_____ 9/22 , 2009

SBA

_____ 9/22/09

potential new customers must be approved by SBA Corporate Headquarters by the issuance of an account number and credit limit. Sales Agent agrees to refer to SBA Consolidators, Inc., an affiliate of SBA, all ocean and/or customhouse brokerage business.

It is mutually covenanted and agreed as follows: SBA in promoting the sale of its programs by Sales Agent and its other agents, will seek to advertise in a manner to develop public awareness and confidence in its agents and programs.

Sales Agent, in support of its selling and servicing of SBA customers, agrees to advertise only in a manner that will develop customer confidence in Sales Agent and SBA products and programs and will not use any advertising tending to mislead the public.

Sales Agent agrees to discontinue any and all advertising that SBA may reasonably find to be injurious to SBA's business or likely to deceive the public.

Without the prior approval of SBA Corporate, Sales Agent shall not subcontract or otherwise delegate any of its activities on behalf of SBA to third parties who are not on an SBA approved vendor list (including but not limited to providers of air and ground transportation services).

Service By Air, Inc.'s corporate marketing department may generate sales leads of accounts which are located in Sales Agent's area of responsibility and pass them on to Sales Agent. Sales Agent is responsible for follow up with such accounts. Sales Agent is required to make sales calls to these accounts within fourteen (14) days of notification of

Sales Agent

_____
9/22 _____, 2009

SBA

_____
9/22/09

the sales lead and to continue to call upon the account until generating traffic. If Sales Agent is not complying, SBA reserves the right to reassign the account.

Service By Air, Inc. will make available for purchase computer hardware systems which Sales Agent may purchase. Sales Agent agrees to update its computer systems as per SBA's Management and Information Systems ("MIS") requirements and make Sales Agent's computer systems compatible with SBA's.

Computer software currently is provided by SBA at no charge and is maintained by SBA. If Sales Agent desires any customization of software for its operation or for customers being serviced, there may be an hourly charge by SBA for such specialized software.

Sales Agent will be provided with all required sales and tariff literature that is required by SBA Corporate and is in distribution by SBA Corporate. If Sales Agent requests to print locally sales and tariff literature, Sales Agent must get approval from SBA Corporate on each proof before printing.

Sales Agent will occupy offices and terminal facilities for transfer and storing of freight shipments which meet SBA standards and which have received SBA approval.

SBA will make available to Sales Agent instruction in sales, marketing and servicing of SBA programs at SBA's Corporate by trained personnel.

Sales Agent

9/7 2                    , 2009

SBA

9/22/09

If Sales Agent requests SBA training on site at Sales Agent's terminal, in any of its programs, SBA will, at its sole discretion, offer to instruct Sales Agent's personnel at no additional cost.

Sales Agent acknowledges that the proper sale and presentation of programs and services should be undertaken only by trained personnel and that inaccurate sales and service may prove injurious to SBA's business and reputation and the business of SBA's other Sales Agents.

Sales Agent is not authorized to make or offer to proposed customers on behalf of SBA any representation greater than SBA's Terms and Conditions and SBA's contracted rates with proposed customers. If a customer desires a service not covered, then Sales Agent shall quote a special rate and the customer must sign off in writing its acceptance of the special rate prior to Sales Agent performing the service.

## 2. TERM OF AGREEMENT

This Sales Agent Agreement shall begin as of the date hereof and continue to September 30, 2011 for a term of 2 years. Unless either party gives written notice to the other of its intention to terminate this Agreement at least thirty (30) days prior to the expiration of the initial term, the Agreement will be renewed for an additional one (1) year term provided Sales Agent executes an agreement of the type then currently used by SBA ("Amended Sales Agent Agreement"). Sales Agent shall deliver such Amended Sales Agent Agreement to SBA within thirty (30) days prior to expiration of the initial term. In

Sales Agent

_____ 9/22 _____, 2009

SBA

9/22/09

connection with said renewal, Sales Agent shall make any changes and/or innovations in the SBA image, business methods or otherwise, which may be required by SBA for its agents generally. Sales Agent shall accomplish all required changes at least ninety (90) days after commencement of the renewal period, or SBA may revoke its approval of the renewal, and terminate the relationship at its sole discretion.

In the event this Agreement is not renewed, this Agreement shall be of no further force and effect after the date of termination.

## 3. DEFINITIONS

"C.O.D." means Cash on Delivery.

"Customhouse Brokerage" means an individual or company licensed to engage in the entering and clearing of goods through customs for importers and arranging for the delivery of goods.

"Direct Cost" means any cost directly related to a shipment, including but not limited to pickup and delivery charges, airline costs, all linehaul charges, including airline trucking charges and ocean charges, insurance charges, COD fees, credit card fees, break bulk charges, claims not covered by SBA's insurance, overseas agent charges, including profit sharing and commissions paid to overseas agent and any and all other costs associated with a complete door to door shipment.

"FAA" means Federal Aviation Administration of the U.S. Department of Transportation.

Sales Agent

9/22 , 2009

SBA

9/22/09

"F.C.C.O.D." means Freight Charges and Cash on Delivery.

"Gross Profit" means Gross Sales less Direct Costs.

"Gross Sales" means total charges invoiced to a customer per shipment.

"HWB" means SBA's House Way Bill.

"IACSSP" means Indirect Air Carrier Standard Security Program of the U.S. Department of Transportation, Transportation Security Administration.

"IATA" means International Air Transportation Association.

"ICC" means Interstate Commerce Commission and its successor agencies.

"MIS" means Management Information Systems.

"MWB" means Master Waybill which airline or truckers charges.

"Premises" means 850 Calcon Hook Road, Bay 19, Sharon Hill, PA 19079.

"PU&D" means Pick Up and Delivery.

"RFQ" means request for quote.

"SBA" means Service By Air, Inc., a New York corporation.

"SBA Consolidators" means SBA Consolidators, Inc., a New York corporation.

"SBA Terms and Conditions" means the Terms and Conditions as amended, published by SBA.

"Sales Agent" means Phoenix Cartage and Air Freight, LLC, a limited liability company.

"TSA" means Transportation Security Administration of the U.S. Department of Homeland Security.

"Warsaw Convention" means the Convention for the Unification of Certain Rules relating to International Carriage by Air, signed at Warsaw October 12, 1929, and any of its subsequent amendments and protocols including the Montreal Protocol No. 4.

Sales Agent

9/22/09

SBA

9/22 _____, 2009

4.   **SALES COMMISSION AND PAYMENT TO SALES AGENT**

Sales are defined as follows: Shipments originating and/or billed to customers of SBA sold and secured by Sales Agent's in the area of the Sales Agent's responsibility. Service By Air, Inc. shall pay net sales commissions in accordance with the terms and conditions of this Agreement. Net sales commissions per shipment shall be defined as the amount of SBA's House Waybill ("HWB") gross invoice as computed in accordance with SBA's applicable rates less (i) SBA's transportation costs, including but not limited to air and/or surface transportation costs, (ii) any other actual pickup and delivery ("PU&D") costs, all of which must be negotiated and approved by SBA Corporate, (iii) all ancillary costs, including but not limited to all insurance valuation cost charges, tariff cartage expense at origin and destination, advanced charges, fuel surcharges and any other directs costs related to the shipment. Any variation from the PU&D costs in effect in SBA's PU&D data base must be approved by SBA Corporate. Domestic freight is defined as freight moving wholly between points in any of the fifty states of the United States and Puerto Rico.

During the term of this Agreement, SBA will pay Sales Agent a sales commission per shipment as defined in Section 3(a) hereof.   The commission percentage (%) will be paid based on gross sales profits after cost ("Gross Profit"), as set forth below:

a.   Domestic Revenue

(i)   Sales Agent's Area of Responsibility:   If Sales Agent secures the sale and originates said freight in its Area of Service Responsibility, Sales Agent and SBA Corporate accounting will receive the following percentages of Gross Profit:

Sales Agent

9/22/09

SBA

9/22, 2009

|  | **SBA CORPORATE** | **AGENT** |
|---|---|---|
| Oct. 1, 2009 through Jan. 31, 2010 | 0% | 100% |
| Feb. 1, 2010 through May 31, 2010 | 10% | 90% |
| June 1, 2010 through Sep. 30, 2010 | 20% | 80% |
| Thereafter | 35% | 65% |

(ii)    Out of Town Sale: If Sales Agent secures a sale outside its Area of Service Responsibility and another SBA facility originates the freight, Sales Agent and SBA Corporate accounting will receive the following percentages of Gross Profit:

Sales Agent

9/22/09

SBA

9/22 , 2009

|  | SBA CORPORATE | AGENT |
|---|---|---|
| Oct. 1, 2009 through Jan. 31, 2010 | 0% | 100% |
| Feb. 1, 2010 through May 31, 2010 | 10% | 90% |
| June 1, 2010 through Sep. 30, 2010 | 20% | 80% |
| Thereafter | 35% | 65% |

The SBA facility that originates the freight outbound will receive pick-up and handling fees as published in the SBA Policy and Procedures Manual. Sales Agent and the SBA Agent at origin may agree on a commission split different than the above subject to putting the new commission split agreement in writing and submitting it to Corporate for final approval. If Sales Agent must travel outside Sales Agent's Area of Service Responsibility to secure a sale, Sales Agent must have the prior approval of a SBA Corporate Executive.

(iii)    National Account Sale:  Any account that has multiple shipping facilities or that has a corporate headquarters with a centralized traffic department that requires a freight company to be on their approved carriers list is considered a National Account.

(a)    If an SBA Corporate Executive or National Sales Team member secures sale, SBA Corporate will receive 33-1/3% of Gross Profit for the SBA Corporate Executive or National Sales Team member, the SBA facility handling customer service and

Sales Agent

9/22/09

SBA

9/22                    , 2009

operations approved by SBA corporate will receive 33-1/3% of Gross Profit and SBA Corporate Accounting will receive 33-1/3% of Gross Profit.

    (b)    If Sales Agent sells a National Account and SBA becomes an authorized carrier, the commissions shall be distributed pursuant to (ii) above. In the event that Sales Agent requests assistance from a SBA National Sales Team Member or SBA Corporate Executive and such National Sales Team Member or SBA Corporate Executive becomes involved and subsequently helps close the sale and takes responsibility for public relations of the account, then 33-1/3% of the Gross Profits will be distributed to SBA Corporate for the SBA Corporate Executive or SBA National Sales Team Member, 33-1/3% of the Gross Profits will be distributed to the Sales Agent and 33-1/3% of the Gross Profits will be distributed to SBA Corporate Accounting. The provisions of this subparagraph (b) shall not be deemed to apply if SBA Corporate's marketing group is requested to create a proposal and/or associated materials on Sales Agent's behalf.

    (iv)    Provided however, SBA reserves the right to reduce the commission payment to Sales Agent by 1% for each percentage point under 35% by:

    (a)    shipment when Sales Agent is the linehaul provider; and

    (b)    account when someone other than Sales Agent is providing the actual shipping service.

For shipments where Sales Agent has provided the linehaul service, SBA shall review each account quarterly. During its analysis, SBA will analyze the account's overall Gross Profit and payment history and determine if a commission reduction is required. Any resulting charge



Sales Agent

9/22/09

SBA

9/22, 2009

backs will be deducted from commissions owed to Sales Agent. Service By Air, Inc. reserves the right to reduce Sales Agent's commission for that account on a going forward basis.

(v)     If Sales Agent picks up a return shipment not sold by Sales Agent and sends it back to the originating SBA facility, then no commission is earned by Sales Agent and Sales Agent receives only its pick-up or delivery and/or transfer charges. On any transfer or on-forwarding of freight to its destination from another SBA facility, there is no commission earned by Sales Agent, and Sales Agent receives only its pick-up or delivery and/or transfer charges.

(vi)    No sales commission will be earned by Sales Agent when Sales Agent only supplies a sales lead and/or sales support to another SBA facility. Service By Air, Inc. Corporate shall have sole and absolute authority to determine any disputes concerning sales leads, shared sales support and commissions.

Sales Agent

9/22/09

SBA

9/22 , 2009

**b.**     Charter Revenue or Revenue Where SBA Advances The Costs of Transportation

Charter revenue or any revenue where SBA advances the cost of transportation in advance of being paid by the shipper, the maximum commission will be 50% of Gross Profit.  Provided however where SBA advanced the cost, then for every day over thirty (30) days that SBA is not repaid the advanced costs of transportation the commission amount shall be reduced by five percent (5%) for each thirty (30) days of delinquency.  The prevailing current bank interest rate (based on SBA Corporate bank(s) rate) will be calculated and charged on a daily basis.  SBA reserves the right to refuse any charter for any reason.  If SBA accepts a charter, the payment schedule will be as follows: 1/3 of the payment is due at signing or initiation of the charter, 1/3 of the payment is due upon delivery of the shipment, and 1/3 of the payment is due within thirty (30) days of delivery.  If this procedure is not followed, then 100% of the monies advanced by SBA will be charged back to Sales Agent.  Provided however, if SBA advances the cost of transportation for the charter and payment in full is not received within three (3) business days from the date the charter contract is executed or when the shipment is picked up, then the maximum commission to Sales Agent will be 50% of Gross Profit.

**c.**     International Revenue

If Sales Agent is appointed by SBA as the International Sales Agent, the international sales commission will be as follows: Prepaid business sold by U.S. agency will be commissionable at agency's current domestic split; collect business sold by U.S. agency will be commissionable at fifty percent (50%) of Gross Profit; routed traffic from other domestic SBA Agencies is not commissionable to Sales Agent named in this Agreement; international routing order (R/O)

Sales Agent

9/22/09

SBA

9/22                    , 2009

traffic sold by international overseas Sales Agent is commissionable to this Agency at twenty-five percent (25%) of Gross Profit. In the event that an international shipment has an overall Gross Profit of under 25%, SBA reserves the right to reduce the commission payment to Sales Agent by 1% for each percentage point under 25%. SBA shall review each account quarterly. During its analysis, SBA will analyze the account's overall Gross Profit and payment history and determine if a commission reduction is required. Any resulting chargebacks will be deducted from commissions owed to Sales Agent. Service By Air, Inc. reserves the right to reduce Sales Agent's commission for that account on a going forward basis.

The provisions set forth in Section 4a.(v) and (vi) also apply to international shipments.

**d.** <u>Bonus Revenue</u>.

Additionally, if Sales Agent secures (where no other agent is involved) aggregate of sales in excess of Five Million and No/100 Dollars ($5,000,000.00) and a minimum of Twenty Five Percent (25%) Gross Profit on a full year (12 months) of sales for international air import and export sales and a minimum of Thirty Five Percent (35%) Gross Profit on a full year of domestic air or ground freight sales.

However, the aggregate shall exclude:

    (i)  international traffic routed and sold by overseas agent;

    (ii)  all ocean freight sold; and

    (iii)  all custom house brokerage.

Sales Agent _____ 9/24/09

SBA _____ 9/22 _____, 2009

Then Sales Agent shall be paid a bonus on the full year (12 months) of Gross Profit pursuant to the schedule set forth below:

| Annual International Air Import and Export Sales And Domestic Air or Ground Freight Sales | Bonus % on Gross Profit |
|---|---|
| In excess of 5 Million Dollars and less than 6 Million Dollars | 3% |
| In excess of 6 Million Dollars and less than 7 Million Dollars | 4% |
| In excess of 7 Million Dollars and less than 8 Million Dollars | 5% |
| In excess of 8 Million Dollars and less than 10 Million Dollars | 6% |
| In excess of 10 Million Dollars and less than 15 Million Dollars | 7% |
| In excess of 15 Million Dollars and less than 20 Million Dollars | 8% |
| In excess of 20 Million Dollars and less than 30 Million Dollars | 9% |
| In excess of 30 Million Dollars | 10% |

The bonus shall be paid annually on a separate check. The bonus shall be in addition to the net sales commission earned.

In addition, all accounts receivable over ninety (90) days, all uncollected accounts receivable, bad debts, all under costing adjustments and money due to Service By Air, Inc. per agreement

Sales Agent

9/22/09

SBA

9/22 _____, 2009

not paid to Service By Air, Inc. will not be computed in the yearly sales totals and in the bonus calculations. Upon receipt of all disputed money paid to Service By Air, Inc., a second check (being the final check) will be paid to Sales Agent at the appropriate commission level as indicated on the bonus corporate rebate chart set forth above.

5. **AREA OF SALES AND SERVICE RESPONSIBILITY**

Sales Agent is hereby granted a non-exclusive area of domestic sales and customer service responsibility in which to develop and service the customers of the SBA Agent Network. The service area is defined as set forth on **Exhibit "A"** attached hereto. Sales Agent agrees to refer to SBA Consolidators, Inc. all ocean and customhouse brokerage business.

Sales Agent is responsible to grow and develop the service area territory assigned to Sales Agent through obtaining new customers and maintaining existing customers. Sales Agent shall demonstrate its commitment to the expansion of the SBA Network by adding new business yearly through an increase in customers, gross sales and net dollars.

Sales Agent shall employ and maintain a sufficient number of adequately trained and competent personnel, including without limitation, sales agents, operations staff and customer service personnel to carry out and perform properly and fully all of Sales Agents' duties, obligations and responsibilities under this Agreement.

Without the prior approval of SBA Corporate, Sales Agent shall not subcontract or otherwise delegate any of its activities on behalf of SBA to third parties who are not on an SBA approved vendor list (including but not limited to providers of air and ground transportation services).

Sales Agent

_____

9/22/09

SBA

_____, 2009

9/22