**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| SERVICE BY AIR, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:14-cv-01754 |
| vs. | ) | |
| | ) | Hon. Robert M. Dow, Jr. |
| PHOENIX CARTAGE AND AIR | ) | U.S. District Court Judge |
| FREIGHT, LLC; PHILIPPE GABAY; and | ) | |
| RADIANT LOGISTICS, INC. | ) | Hon. Young B. Kim |
| | ) | U.S. Magistrate Judge |
| Defendants. | ) | |
| | ) | |

**FIRST AMENDED VERIFIED COMPLAINT**
**FOR BREACH OF CONTRACT AND OTHER RELIEF**

NOW COMES **SERVICE BY AIR, INC.** ("SBA"), Plaintiff herein, by and through its

attorneys, Tishler & Wald, Ltd. and Ice Miller LLP, and for its First Amended Verified

Complaint for Breach of Contract and Other Relief against **PHOENIX CARTAGE AND AIR**

**FREIGHT, LLC** ("Phoenix"), **PHILIPPE GABAY** ("Gabay"), and **RADIANT LOGISTICS,**

**INC.** ("Radiant"), Defendants herein, respectfully states as follows:

**Allegations Common to All Counts**
**Parties**

1.      Plaintiff, SBA, is and was at all times relevant hereto, a corporation organized

under the laws of New York and having its principal place of business at 222 Crossways Park

Drive, Woodbury, New York 11797 and maintaining agent offices, *inter alia*, at 811 Thorndale

Avenue, Bensenville, IL 60106.

2.      Defendant, Phoenix, is and was at all times relevant hereto, a limited liability

company organized under the laws of Pennsylvania and having its principal place of business at

514 Kaiser Drive, Folcroft, PA 19032.

1

3.     Defendant, Gabay, is and was at all times relevant hereto, an individual with his principal residence at 438 Clairemont Road, Villanova, Pennsylvania 19085.

4.     Defendant, Radiant, is and was at all times relevant hereto, a Delaware corporation with its headquarters at 405 114th Ave SE, Bellevue, Washington and maintaining offices, *inter alia*, at 610 Supreme Drive, Bensenville, IL.  Radiant is a domestic and international logistics provider doing business under various brand names, including Radiant Global Logistics, Inc., its wholly owned operating subsidiary.

### Jurisdiction and Venue

5.     This Court has original jurisdiction under 28 U.S.C. §1332(a) by virtue of diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeding $75,000.00.

6.     This Court also has jurisdiction over this matter pursuant to Paragraph 24 of the Sales Agent Agreement ("Agreement") between SBA and Phoenix, a copy of which is attached hereto as **Exhibit A** and made a part hereof, wherein Phoenix and SBA expressly agreed to the application of Illinois law, jurisdiction and venue of any court of jurisdiction in the City of Chicago, IL.

7.     This Court has subject matter jurisdiction over the claims for trademark infringement and unfair competition under Sections 32 and 43(a) of the Lanham Act, as set forth in Counts VIII and IX of this action, under 15 U.S.C. §1121 and 28 U.S.C. §§1331 and 1338. This Court has subject matter jurisdiction over the Illinois Uniform Deceptive Trade Practices Act and common law claims set forth in Counts X and XI pursuant to 28 U.S.C. §1338(b) and under the principles of supplemental jurisdiction, 28 U.S.C. §1367, because such claims arise from the same or closely related conduct of Defendants.

2

8.     This Court has personal jurisdiction over Defendant Radiant by virtue of, among other things, the fact that Radiant has done and transacted, and continues to do and transact business in the State of Illinois and has sufficient minimum contacts with the State of Illinois so as to foreseeably submit themselves to the jurisdiction and process of this Court.  Moreover, Radiant has aided and abetted Phoenix and Gabay in the conduct alleged in this Amended Complaint.

9.     Venue is proper in this Court pursuant to Paragraph 24 of the Agreement which fixes venue in any court of jurisdiction in the City of Chicago, IL.[1]

### **Introduction and Background**

10.     For over 40 years, SBA has been engaged in air freight shipping which includes international freight service and global logistics services for SBA customers, including ocean and ground shipping.

11.     Over the past four decades, SBA has meticulously developed and maintained a high reputation for its service quality and reliability with its customers, who have enjoyed the benefit of SBA's proprietary freight forwarding software to achieve on time deliveries and innovative solutions to many international freight, air freight shipping and global logistics problems.

12.     SBA's programs and services are only sold, provided and serviced either by SBA employees or by authorized agents employing trained sales, operations and customer service personnel fully knowledgeable of SBA's proprietary procedures and programs.

---

[1] This case was originally filed in the Circuit Court of Cook County, Illinois, designated as Case No. 2014 CH 4170 and was subsequently transferred to this Court upon Motion by the Defendants.

### *The Sales Agent Agreement and Relationship Between SBA and Phoenix/Gabay*

13.     On or about October 1, 2009, SBA entered into the Sales Agent Agreement ("Agreement") with Phoenix for representation of SBA in certain territory as defined by the Agreement.  (Exhibit A, supra. at Page 2, Section 1.)

14.     The Agreement has been amended and extended from time to time and expired on its own terms on February 28, 2014.   Ex. A at Page 4.

15.     Upon information and belief, Phoenix is a Pennsylvania limited liability company whose only members are Gabay and his wife, Paige Gabay, each of whom hold a 50% membership stake in the LLC, with Gabay being the Managing Member of the LLC.

16.     At all times relevant hereto, Gabay represented himself to SBA as the President and Managing Member of Phoenix and signed all documents and agreements on behalf of Phoenix, including the Agreement herein.

17.     Upon information and belief, Gabay was solely responsible for the day to day operations, contractual relationships and management of Phoenix.

18.     At all times relevant hereto, all of SBA's dealings with Phoenix were handled by Gabay who represented himself as the "face" of Phoenix.

19.     Upon information and belief, Gabay used Phoenix as a mere shell in his dealings with SBA.

20.     Gabay represented himself as an agent of SBA in email correspondence by using a signature which read: "Philippe Gabay, General Manager, SBA Global."   See sample email correspondence, attached hereto as **Exhibit B** and made a part hereof.

4

21.    Upon information and belief, for all intents and purposes, Phoenix was the alter ego of Gabay.

22.    Furthermore, SBA treated Gabay and Phoenix as the same entity for all intents and purposes.

23.    The Agreement is replete with references to "Sales Agent" in the individual capacity, implying that the Agreement was to be binding upon not only Phoenix but also Gabay. To wit:

      a.    Paragraph 14(B) of the Agreement provides that "Sales Agent further agrees that the use by a spouse or member of Sales Agent's immediate family…of confidential information…;"

      b.    Paragraph 18 covers death of a Sales Agent;

      c.    Paragraph 21 states that "Service By Air, Inc. shall not exercise its right of first refusal in the sale of the Sales Agent's operations to a family member who otherwise qualifies in accordance with this Agreement;"

      d.    Paragraph 22 states that "Sales Agent acknowledges that it shall be deemed a breach of this Agreement if Sales Agent's spouse or other member of Sales Agent's immediate family shall engage in any conduct prohibited in this Agreement;"

      e.    Paragraph 33 of the Agreement states that "'Sales Agent' includes all the signatories to this Agreement, except SBA, regardless of whether such signatories are one or more persons, corporations or other legal entities."

      f.   Paragraph 35 states: "All Sales Agent signatories to this contract shall be jointly and severally liable for the performance of all the terms, covenants and conditions hereof."

See Agreement, Exhibit A.

24.    Many accounts Phoenix/Gabay was charged with servicing under the Agreement were accounts which SBA or other SBA agents originated and cultivated both prior to and after the Agreement's inception. In addition, Phoenix/Gabay inherited at least one major account originally generated by SBA corporate. See Affidavit of Marty Capuano, Chief Financial Officer of SBA, verifying the SBA customers originated by SBA is attached hereto as **Exhibit C** and made a part hereof. A portion of these accounts were expanded by Phoenix/Gabay. Exhibit C, id.

25.    Phoenix/Gabay with the aid of SBA's nationwide network of agents expanded the pre-existing customer list and generated many minor accounts under the Agreement. Exhibit C.

26.    The Agreement contains a provision restricting Phoenix/Gabay from directly or indirectly participating, engaging or having any interest in any freight forwarding business in the defined Philadelphia metropolitan area. See Paragraph 22 of Agreement, previously attached hereto as Exhibit A and made a part hereof.

27.    The Agreement also contains a provision granting SBA an irrevocable first right and option to purchase Phoenix's intangible assets and any employment contracts and leases on the same terms and conditions as any bona fide purchaser, exercisable by SBA within thirty (30) days after receipt of an offer for purchase containing all terms of the proposed sale and the identity of the proposed purchaser. Exhibit A, at ¶21.

28.     Furthermore, the Agreement contains a provision requiring the maintaining of confidentiality and non-disclosure of SBA's business methods, customer lists and other confidential information by Phoenix/Gabay which states as follows:

> "Sales Agent recognizes that the names 'SBA', 'Service By Air' and "Service by Air, Inc. are associated with distinctive methods and techniques of doing business which have been developed as a result of the expenditures of substantial time and money, and that such methods and techniques are only disclosed to members of the SBA Network and are considered confidential and trade secrets. Sales Agent further recognizes that disclosure of SBA's methods, techniques, confidential information or trade secrets would result in substantial injury to SBA. Sales Agent and all employees shall not at any time directly or indirectly furnish to any person not directly affiliated with the SBA Network any information as to SBA's methods or techniques, SBA customer lists, or any information pertaining to operations or procedures which have been supplied by SBA…"

Agreement, Ex. A at ¶14.

29.     Paragraph 14(C) of the Agreement also provides for the imposition of the non-breaching party's attorneys' fees and costs on the breaching party.

### *Expiration of the Agreement and Termination of the SBA—Phoenix/Gabay Relationship*

30.     In or around January 2014, Gabay approached SBA with certain demands regarding termination of the Agreement, renewal of the agency or the acquisition of Phoenix.

31.     Throughout January and February 2014, SBA and Phoenix/Gabay were engaged in discussions to continue the Agreement.

32.     At approximately 5:00 p.m. on February 28, 2014, Gabay shut down SBA's remote access to the SBA software and information on the Phoenix computer system. See Affidavit of Mike D'Iorio, SBA's IT Manager, attached hereto as **Exhibit D** and made a part hereof.

33.     The Agreement did not expire until 11:59 p.m. on Friday, February 28, 2014, with certain key provisions of the Agreement (i.e., confidentiality and non-compete provisions) continuing beyond that date.   See Ex. A, at Paragraphs 14 and 22.

### *The Acquisition of Phoenix by Radiant*

### *Radiant Expands Its Network By Acquiring Various Competitors*

34.     Throughout the last several years, Radiant has been expanding its network by acquiring large individual contributors from competing networks, including but not limited to Phoenix, Ilsa International, Ltd. ("Laredo Transaction") and ALBS Logistics ("NY-JFK Transaction").   See Radiant Press Release, "Radiant Logistics Announces Results for Third Fiscal Quarter Ended March 31, 2014" a copy of which is attached hereto as **Exhibit E** and made a part hereof.

35.     The Laredo Transaction occurred in late 2011.  A purported copy of the Asset Purchase Agreement between Radiant and Isla International, Ltd. ("APA") for the Laredo Transaction is attached hereto as **Exhibit F** and made a part hereof.

36.     Article 6.7 of the APA required that Isla International, Ltd. ("Isla" or "Seller") provide a schedule of true, correct and complete copies of audited financial statements of Isla for its two most recent fiscal years and unaudited financial statements for the last six months.  See Exhibit F, Article 6.7 at pages 16 and 17.

37.      Article 6.11 of the APA required Isla to provide to Radiant a detailed schedule identifying Seller's principal customers consisting of the fifteen largest customers based on percentage of revenue and those customers that account for no less than fifty percent of the gross revenues of Seller.  See Exhibit F, Article 6.11 at page 19.

8

38.     Article 6.15 of the APA required Isla to provide Radiant a complete list of all material contracts of Seller "which shall consist of all agreements, leases, licenses, contracts, obligations, promises, commitments, arrangements, understanding, or undertakings (whether oral or written or express or implied) to which Seller is a partner, under which the Seller may become subject to any obligation or liability, or by which the Seller or any of its assets may become bound…"  Article 6.15 required disclosure by the Seller of all material contracts, including but not limited to any confidentiality and non-disclosure agreement on which Seller was obligated. See Exhibit F, Article 6.15 at pages 20-22.

39.     Article 8.1 of the APA required Seller to provide Radiant with access to all of Seller's sites, properties, books and records and any additional information related to the purchased assets as Radiant may reasonably request.  Seller may also not unreasonably withhold written consent to Buyer to contact Seller's customers.  See Exhibit F, Article 8.1 at page 29.

40.     Article 8.8 of the APA required that the Seller neither directly nor indirectly participate in any discussions or negotiation or in any way cooperate with any effort or attempt by any person or solicit or initiate submission of proposals or offers from any persons relating to the purchase of all or a material portion of the assets of Seller.  See Exhibit F, Article 8.8 at page 33.

41.     Article 9.2 of the APA required that all documents required of Seller or actions required by the APA are taken at or before closing.  See Exhibit F, Article 9.2 at page 33.

### *Radiant Acquires Phoenix In a Transaction Similar to Its Acquisition of Other Competitors*

42.     Upon information and belief, prior to February 28, 2014, Radiant presented Phoenix with an offer to purchase the assets of Phoenix with the same or substantially the same boiler plate provisions Radiant used in the above-described APA, including certain customer

relationships of Phoenix, many of which were customers of SBA serviced by Phoenix as SBA's agent.

43. In mid-February, 2014, Gabay sent an email to all Phoenix employees asking them to be present for a meeting on Saturday, March 1, 2014, and offering them additional compensation for their presence at the meeting.

44. Upon information and belief, the meeting was arranged to discuss the Acquisition.

45. Upon information and belief, on the morning of Saturday, March 1, 2014, Radiant began soliciting and hiring Phoenix employees and soliciting employees of another SBA agency. See Affidavit of Ron Lynch, Vice President of Operations of SBA ("Lynch Affidavit"), attached hereto as **Exhibit G** and made a part hereof ("Lynch Affidavit"). Also see Affidavit of Cheryl Hollander ("Hollander Affidavit"), attached hereto as **Exhibit H** and made a part hereof, indicating that she herself was solicited by Radiant's Founder and CEO, Bohn Crain, and confirming that Radiant was well aware of the Agreement and its non-compete provisions.

46. On Monday, March 3, 2014, Radiant issued a press release announcing its Acquisition of select customer relationships of Phoenix and purchase of its assets along with stock payments to Gabay ("Acquisition") and the hiring of Gabay as Vice President of Business Development for Radiant's Mid-Atlantic region. A copy of the press release is attached hereto as **Exhibit I** and made a part hereof.

47. On March 3, 2014, Lori Moyer, Senior Account Executive at Radiant (and former employee of Phoenix), sent correspondence to at least one SBA customer with the subject line "Email and name change." A copy of the email is attached hereto as **Exhibit J** and made a part hereof. The email indicates that "As of March 1, 2014 SBA PHL has joined with Radiant Global Logistics one of the fastest growing freight forwarding companies in North America.

We are the same dedicated team you are accustomed to…" See Exhibit J. The email was designed to cause customer confusion and misappropriate SBA customers by falsely claiming that SBA had simply changed its name when in fact Phoenix had sold its assets to Radiant.

48.     As recently as March 6, 2014, SBA has been informed by one of its customers that Radiant has contacted said customer requesting a change of the consignee on a shipment predating March 1, 2014 from SBA to Radiant, which would, in effect, strip SBA of payment for a shipment it is entitled to.[2] See correspondence between Radiant and Cordray Corp. attached hereto as **Exhibit K** and made a part hereof. Also, see Capuano Affidavit and Supplemental Capuano Affidavit, previously attached hereto as Exhibit C.

49.     Upon information and belief, in early June, 2014, Gabay visited an SBA customer in the Philadelphia Metropolitan area, with the purpose of acquiring said customer and business for Radiant's benefit. See Lynch Amended Affidavit, attached hereto as Exhibit G.

50.     On May 14, 2014, Radiant reported financial results for the three and nine months ended March 31, 2014. See Press Release previously attached hereto as Exhibit E.

51.     During the report of financial results for the period ending March 31, 2014, Radiant CEO Bohn Crain indicated the following: "We also continue to make good progress in our network expansion and in March of this year opened new operations in Philadelphia and completed a transaction with Phoenix cartage and Airfreight, LLC ("PCA"). Prior to the Acquisition, PCA operated as part of a competing national transportation group but saw value in transitioning to the Radiant network. We believe the transaction is representative of the broader pipeline of opportunities available to us in the marketplace and is further evidence of our ability to attract large individual contributors from competing networks who can benefit from the

---

[2] The parties have since resolved their issues with respect to shipments in transit at the time of the Agreement's termination.

Radiant platform similar to our Laredo transaction (December 2011) and our NY-JFK transaction (February 2012)." (*emphasis added*)  See Radiant financial results Press Release previously attached hereto as Exhibit E.

52.     Upon information and belief, the APA used in the Laredo transaction is the same or substantially similar to the Asset Purchase Agreement used in Radiant's Acquisition of Phoenix.

### *SBA's Trademark Rights*

53.     SBA has used and continues to use the trademarks SBA GLOBAL LOGISTIC SERVICES, SBA GLOBAL LOGISTIC SERVICES & Design, SBA & Design and SERVICE BY AIR (collectively, the "SBA Trademarks") in connection with its air freight shipping services, including international freight services and global logistics services, that are provided, offered for sale and/or sold in commerce in this District and throughout the United States.  The SBA Trademarks are prominently depicted in advertisements and promotional materials for such services.

54.     SBA is the owner of U.S. Trademark Registration Nos. 4,389,059 and 4,389,061 for the marks SBA GLOBAL LOGISTIC SERVICES and SBA GLOBAL LOGISTIC SERVICES & Design, filed April 24, 2012, in connection with "global logistics management" and "global logistics services".  Registration Nos. 4,389,059 and 4,389,061 were duly and legally issued on August 20, 2013, and are valid and subsisting.  True and correct copies of Registration Nos. 4,389,059 and 4,389,061 are attached hereto as **Exhibits L** and **M**.

55.     SBA is the owner of U.S. Trademark Registration No. 3,616,733 for the mark SBA & Design, filed April 24, 2012, in connection with "global logistics management" and "global logistics services".  Registration No. 3,616,733 was duly and legally issued on May 5,

2009, and is valid and subsisting. A true and correct copy of Registration No. 3,616,733 is attached hereto as **Exhibit N**.

56. SBA is the owner of U.S. Trademark Supplemental Registration No. 3,438,446 for the mark SERVICE BY AIR, filed July 23, 2007, in connection with "global logistics management" and "global logistics services". Registration No. 3,438,446 was duly and legally issued on May 27, 2008, and is valid and subsisting. A true and correct copy of Registration No. 3,438,446 is attached hereto as **Exhibit O**.

57. SBA advertises and promotes its air freight shipping and global logistics services through various channels common in the industry and used by Phoenix/Gabay, including by participation in various tradeshows, email marketing, search engine marketing, and by paid search advertising through Google and Yahoo. SBA further advertises its air freight shipping and global logistics services on its Internet website "sbaglobal.com". The website describes SBA's global logistics services, allows customers to access their account information, manage and track their shipments with SBA, request SBA's shipping services, and obtain quotes for SBA's services.

58. Prior to the expiration of the Agreement, in 2012 and 2013 SBA enjoyed annual revenues in Phoenix/Gabay's territory in the amount of approximately $1 million. Following the expiration of the Agreement, SBA's revenues from the same accounts previously serviced by Phoenix/Gabay dwindled to less than $20,000 - $30,000 in 2014 to date.

59. By reason of SBA's extensive advertising and promotion, and the high quality and performance standards of its air freight shipping and global logistics services, the SBA Trademarks have become extremely well known in the industry and to consumers, has acquired

substantial and valuable goodwill, and is distinctive of SBA's services, such that the industry and consumers automatically associate the SBA Trademarks with SBA.

60.     By virtue of SBA's lengthy and substantial promotion and provision of its services in connection with the SBA Trademarks, those trademarks have become an asset of substantial value to SBA.

### *Defendants' Acts of Trademark Infringement and Unfair Competition*

61.     Pursuant to the Agreement, Phoenix/Gabay was granted a limited right to use the SBA Trademarks in connection with Phoenix/Gabay's operation as SBA's agent -- i.e. "the right to use the name and mark of Service By Air, Inc. and any other authorized names, marks, logos, commercial symbols and copyrighted materials … in the sales and operation of SBA's business" (Exhibit A, paragraph 6.A.).   Phoenix/Gabay's use of the SBA Trademarks was restricted to "the manner and for the purpose SBA directs and no others" (Exhibit A, paragraph 6.A.).

62.     Further pursuant to the Agreement, Phoenix/Gabay's right to use the SBA Trademarks expressly terminated "upon the termination or expiration of this Agreement" (Exhibit A, paragraphs 6.A. and 20.A.).

63.     Following the expiration of the Agreement, Phoenix/Gabay was required to "[c]ease all use of the name and mark 'SBA' or 'Service By Air', or 'Service By Air, Inc.' (Exhibit A, paragraph 20.A.(ii)).   Moreover, Phoenix/Gabay was expressly prohibited from "hold[ing] himself out as formerly of 'Service By Air, Inc.', 'SBA' or 'Service By Air'" and was required to "cease all reference to Sales Agent's previous status as a Service By Air Sales Agent or station" (Exhibit A, at ¶¶ 16.C. and 20.A.(ii)).

64.     The Agreement also prohibited Phoenix/Gabay from any conduct that would assist others in infringing the SBA Trademarks -- i.e. Phoenix/Gabay "shall not, either during or

after the term of the Agreement, do anything to aid or assist any other person to do anything which would infringe upon, harm or contest the validity of SBA's rights in any of its trademarks or copyrights" Exhibit A, at ¶6.C.).

65.     Notwithstanding Phoenix/Gabay's acknowledgement of SBA's rights in the SBA Trademarks by entering into the Agreement, and the Agreement's express terms prohibiting Phoenix/Gabay's use of the SBA Trademarks after the expiration of the Agreement -- on information and belief, after the expiration of the Agreement on February 28, 2014, Phoenix/Gabay and Radiant have used and continue to use the SBA Trademarks in connection with the operation of Radiant's business.  Furthermore, Phoenix/Gabay has and continues to reference its previous status as SBA's Sales Agent, contrary to the Agreement.

66.     On information and belief, on March 3, 2014, Phoenix/Gabay and Radiant sent an email to the same customers and potential customers that Phoenix/Gabay serviced as SBA's Sales Agent, falsely stating that "SBA PHL has joined with Radiant Global Logistics".  A true and correct copy of Radiant's March 3, 2014 email has previously been attached hereto as Exhibit J.

67.     On information and belief, as recently as June 3, 2014, Phoenix/Gabay and Radiant sent an email advertisement of Radiant's services to the same customers and potential customers that Phoenix/Gabay serviced as SBA's Sales Agent, falsely stating that the owner of the copyright in the advertisement is "SBA Global Logistics - Philadelphia".  A true and correct copy of Radiant's June 3, 2014, email is attached as **Exhibit P**.

68.     On information and belief, SBA and Radiant are direct competitors in the air freight shipping and global logistics services industry.  Phoenix/Gabay and Radiant used the

15

SBA Trademarks after the expiration of the Agreement, in connection with the identical services that Phoenix/Gabay provided as SBA's Sales Agent.

69.     On information and belief, SBA's and Radiant's services are sold through the same channels of trade and to the same target customers. Phoenix/Gabay and Radiant used the SBA Trademarks after the expiration of the Agreement, in connection with the offer for sale, sale and provision of services to the same customers and potential customers that Phoenix/Gabay did business with as SBA's Sales Agent. Further, on information and belief, Phoenix/Gabay provided such services using the same third-party vendors that Phoenix/Gabay did business with as SBA's Sales Agent.

70.     On information and belief, SBA and Radiant advertise and promote their respective services in the same channels and media. Phoenix/Gabay and Radiant used the SBA Trademarks after the expiration of the Agreement, in connection with the same type of advertising and promotional efforts that Phoenix/Gabay used as SBA's Sales Agent.

71.     On information and belief, Phoenix/Gabay's and Radiant's aforementioned use of the SBA Trademarks in connection with Radiant's services is likely to cause and has caused actual confusion and deception among SBA's customers, potential customers and third-party vendors as to the source of Defendants' and SBA's respective services, and as to Defendants' affiliation, connection or association with SBA.

72.     On information and belief, Defendants' have been at all times relevant hereto, aware of SBA's rights in its SBA Trademarks and Registrations therefor, before the expiration of the Agreement and Defendants' subsequent use of the SBA Trademarks. As a result, Defendants' use of the SBA Trademarks is in knowing and willful disregard of SBA's rights.

73.     On information and belief, Defendants' use of the SBA Trademarks after the expiration of the Agreement was for the purpose of trading upon the goodwill in and associated with the SBA Trademarks.

## COUNT I—BREACH OF CONTRACT AGAINST PHOENIX, GABAY AND RADIANT
### (Paragraph 21 of Agreement—Right of First Refusal)

74.     SBA incorporates and restates the allegations of Paragraphs 1 through 73 of this Amended Verified Complaint as though fully set forth herein.

75.     Paragraph 21 of the Agreement gives SBA the irrevocable first right and option to purchase Phoenix's intangible assets and any employment contracts and leases on the same terms and conditions as any bona fide purchaser, exercisable by SBA in writing within thirty (30) days of its receipt of a copy of the offer to purchase, which offer must contain all the terms of the proposed sale and the identity of the proposed purchaser.  Agreement, Exhibit A at ¶21.

76.     Paragraph 21 of the Agreement goes on to state that "any sale or attempted sale without first giving SBA the right of first refusal shall be void and of no force or effect." Exhibit A.

77.     Upon information and belief, Phoenix/Gabay were attempting to sell Phoenix's assets and SBA customer relationships to Radiant well prior to the expiration of the Agreement. See Affidavit of Bohn Crain, EOD 16-1 at pages 3-6.

78.     Upon information and belief, Gabay travelled to Radiant's corporate headquarters in late January or early February, 2014, in furtherance of the negotiations on the Acquisition.

79.     Upon information and belief, Phoenix received an offer of all or substantially all of the terms of a complex asset purchase agreement from Radiant to purchase Phoenix's assets prior to the expiration of the Agreement.

80.     At no point in time did SBA receive any copy of the offer to purchase from Phoenix/Gabay as required by Paragraph 21 of the Agreement.  See Capuano Affidavit, previously attached as Exhibit C.  Affidavit of Hann Livingston, SBA's Chief Operating Officer ("Livingston Affidavit"), attached hereto as **Exhibit Q** and made a part hereof; and Affidavit of Rosalin Poliseno, President of SBA, attached hereto as **Exhibit R** and made a part hereof.

81.     Phoenix/Gabay's failure to honor SBA's right of first refusal constitutes a breach under the Agreement.

82.     SBA has suffered and will continue to suffer damages as a result of said breach.

83.     Since any sale or attempted sale without first giving SBA the right of first refusal shall be void and of no force and effect, the Acquisition must be voided.

84.     Radiant is a necessary party to this Count in order to effect the remedy sought and an appropriate party since it knew of the Agreement.  Hollander Affidavit, Exhibit H attached hereto.

**WHEREFORE**, Plaintiff SBA demands judgment against Defendant Phoenix and Defendant Gabay for damages, a voiding of the Acquisition, and any other and further relief this Court deems appropriate.

### COUNT II—BREACH OF CONTRACT AGAINST PHOENIX
### (Paragraph 22—Covenant Not to Compete)

85.     SBA incorporates and restates the allegations of Paragraphs 1 through 84 of this Amended Verified Complaint as though fully set forth herein.

86.     Paragraph 22 of the Agreement prohibits Phoenix, during the term of and for three (3) years following termination of the Agreement from directly or indirectly participating, engaging or having any interest in any freight forwarding business in the Philadelphia Metropolitan Area.  Exhibit A.

87.     Phoenix violated the non-compete provisions of Paragraph 22 of the Agreement when Phoenix sold its assets to Radiant and acquired an interest in or otherwise became affiliated with Radiant.  See Exhibit E; Exhibit I.

88.     SBA was and continues to sustain damages as a result of Phoenix breach of Paragraph 22 of the Agreement.

**WHEREFORE**, Plaintiff SBA demands judgment against Defendants Phoenix enjoining their continued violation of the Agreement, an award of damages for their breach and for any other and further relief this Court deems appropriate.

## COUNT III—BREACH OF CONTRACT AGAINST PHOENIX
### (Paragraph 14—Confidential Information and Non-Disclosure)

89.      SBA incorporates and restates the allegations of Paragraphs 1 through 88 of this Amended Verified Complaint as though fully set forth herein.

90.     Upon information and belief, Phoenix breached paragraph 14 of the Agreement by disclosing its customer list, including but not limited to its 15 largest customers and those customers which accounted for at least 50% of its gross revenues, to Radiant prior to the expiration of the Agreement.

91.     Upon information and belief, Phoenix breached paragraph 14 of the Agreement by allowing Radiant access to Phoenix's sites, books and records, prior to expiration of the Agreement.

92.     Phoenix breached Paragraph 14 of the Agreement by disclosing SBA's distinctive methods, techniques of doing business, trade secrets and confidential information to Radiant, by, *inter alia*, maintaining access to SBA's software and data after 5:00 p.m. Friday, February 28, 2014.

93. Phoenix breached Paragraph 14 of the Agreement by using, either directly or indirectly, confidential information or trade secrets or methods and techniques of doing business learned from SBA prior to and after the expiration of the Agreement.

94. Phoenix breached Paragraph 14 of the Agreement by shutting down SBA's remote access to its own computer system before expiration of the Agreement for the purpose of misusing the confidential information.

95. SBA has been damaged by Phoenix's breach of Paragraph 14 of the Agreement.

**WHEREFORE**, Plaintiff SBA requests the entry of judgment against Defendant Phoenix enjoining violation of the Agreement, and mandating (a) return of all SBA software, and data, confidential business information, trade secrets and business methods, and stating under oath that all such information has been returned to SBA, (b) an award of damages resulting from the breach, (c) an award of SBA's costs and attorneys' fees, and (d) any other and further relief this Court deems appropriate.

### COUNT IV—Tortious Interference with Contract Against Gabay

96. SBA incorporates and restates the allegations of Paragraphs 1 through 95 of this Amended Verified Complaint as though fully set forth herein.

97. The Agreement was a valid and enforceable contract between Phoenix and SBA.

98. Gabay knew of the Agreement since he was the Managing Member of Phoenix who executed the Agreement on behalf of Phoenix.

99. Gabay intentionally and unjustifiably induced Phoenix to breach the Agreement by, *inter alia*, causing Phoenix to breach the right of first refusal, non-compete, non-disclosure and confidentiality provisions of the Agreement.

100.    SBA has suffered and continues to suffer damages as a result of Phoenix's breach, induced by Gabay.

**WHEREFORE**, Plaintiff SBA requests the entry of judgment against Defendant Gabay, an award of damages and such other and further relief this Court deems appropriate.

<u>**COUNT V—Tortious Interference with Contract Against Radiant**</u>

101.    SBA incorporates and restates the allegations of Paragraphs 1 through 100 of this Amended Verified Complaint as though fully set forth herein.

102.    Phoenix had a contractual relationship with SBA pursuant to the Agreement.

103.    Radiant knew of the contractual relationship between SBA and Phoenix as part of the due diligence it exercised during the Acquisition.  Exhibit A.  Also see Hollander Affidavit previously attached hereto as Exhibit H.

104.    Radiant knew of the contractual relationship between SBA and Phoenix since, upon information and belief, Phoenix was required to disclose any material contracts and confidentiality agreements to which it was a party to Radiant under the asset purchase agreement between Radiant and Phoenix.  See Article 6.15 of APA, previously attached hereto as Exhibit F and Hollander Affidavit, Exhibit H.

105.    Despite Radiant's knowledge of the Agreement, it induced Phoenix to breach the Agreement by requiring it to disclose confidential information, including but not limited to, customer lists and material contracts, requiring access to Phoenix's sites, books and records and financial data, requiring Phoenix to deal exclusively with Radiant, in effect causing it to breach its duty to provide SBA with a right of first refusal under the Agreement all prior to February 28, 2014.  See APA, previously attached as Exhibit F.

106.    SBA has been damaged by Radiant's conduct.

21

**WHEREFORE**, Plaintiff SBA requests the entry of judgment against Defendant Radiant an award of damages, and such other and further relief this Court deems appropriate.

### COUNT VI—Intentional Interference with Business Expectancy Against Gabay

107.     SBA incorporates and restates the allegations of Paragraphs 1 through 106 of this Amended Verified Complaint as though fully set forth herein.

108.     SBA had a reasonable expectation of retaining its customer relationships, protecting proprietary data and methods and insuring its right of first refusal be honored.

109.     Gabay knew of SBA's expectancy since he executed the Agreement on behalf of Phoenix and was the Managing Member of Phoenix, responsible for all operations of the company.  See Exhibit A.

110.     Upon information and belief, Gabay intentionally interfered with SBA's customer relationships by misappropriating them for the benefit of Radiant prior to expiration of the Agreement and thereafter.

111.     Upon information and belief, Gabay intentionally interfered with SBA's proprietary methods and SBA's expectation of keeping said methods confidential by disclosing such methods to Radiant prior to expiration of the Agreement.

112.     Upon information and belief, Gabay intentionally interfered with SBA's expectation of confidentiality by allowing Radiant access to its sites and methods of doing business, including but not limited to SBA's proprietary software.

113.     SBA has been injured by Gabay's conduct by losing confidential information and customer relationships.

**WHEREFORE**, Plaintiff SBA requests the entry of judgment against Gabay, for the award of damages, and the entry of any other and further relief this Court deems appropriate.

**COUNT VII—Intentional Interference with Business Expectancy Against Radiant**

114.    SBA incorporates and restates the allegations of Paragraphs 1 through 113 of this Amended Verified Complaint as though fully set forth herein.

115.    SBA had a reasonable expectation of retaining its customer relationships, protecting its proprietary information and methods and insuring that its rights of first refusal be honored.

116.    Radiant was aware of SBA's expectancy since it knew of the Agreement and its terms *vis a vis* its due diligence in its Acquisition of Phoenix.  See Affidavit of Cheryl Hollander, Exhibit H indicating Bohn Crain's knowledge of non-compete provisions of Agreement.

117.    Radiant intentionally interfered with SBA's customer relationships by misappropriating them through various misrepresentations, including but not limited to contacting SBA customers and requesting that consignees be changed to Radiant and otherwise misrepresenting itself as an arm of SBA or a simple name change.  See Exhibits C, J, K and P previously attached hereto.

118.    Radiant intentionally interfered with SBA's confidential information, including customer lists and proprietary business methods, by gaining access to same prior to its Acquisition of Phoenix, as required by its asset purchase agreement with Phoenix.  See Articles 6.7, 6.11, 6.15, 8.1 and 8.8 of APA previously attached as Exhibit F.

119.    Radiant intentionally interfered with SBA's expectancy to have its right of first refusal honored by requiring that Phoenix neither directly nor indirectly participate in any discussions or negotiations or in any way cooperate with any efforts or attempts by any person to initiate submission of proposals relating to the purchase of all or a material portion of the assets of Phoenix.  See Article 8.8 of APA, previously attached hereto as Exhibit F.

23

120.     SBA has been injured by Radiant's conduct by losing confidential information and customer relationships.

**WHEREFORE**, Plaintiff SBA requests the entry of judgment against Radiant, an award of damages, and any other and further relief this Court deems appropriate.

## COUNT VIII—Federal Trademark Infringement, 15 U.S.C. § 1114

121.     SBA hereby repeats and incorporates by reference Paragraphs 1 through 120 as if fully restated herein.  Count VIII is a claim for federal trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

122.     The SBA Trademarks are valid and protectable marks.

123.     Defendants' use of the SBA Trademarks after the expiration of the Agreement and false representations that SBA has joined Radiant, are likely to cause and has caused confusion, mistake or deception among consumers as to the origin of Defendants' global logistics services provided under such marks, and/or the mistaken belief by consumers that there is a connection, affiliation or sponsorship between Defendants' global logistics services and those of SBA, all to the detriment of SBA.

124.     Defendants' actions were committed with the knowing and willful intent to cause confusion, mistake or deception.

125.     Defendants' use of the SBA Trademarks constitutes an infringement of SBA's exclusive rights in the SBA trademarks, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

126.     As a direct result of Defendants' actions, SBA has been or is likely to be injured by Defendants' conduct by direct diversion of sales from SBA to Defendants and by a lessening

of the goodwill and business reputation associated with SBA and its services, causing irreparable harm to SBA's goodwill, for which monetary damages are not adequate or readily calculable.

127.    Unless enjoined by this Court, Defendants' aforesaid conduct will continue to cause further irreparable injury to SBA, for which SBA has no adequate remedy at law.

**WHEREFORE**, Plaintiff prays that:

A.    This Court enter a judgment in favor of SBA and against Defendants for trademark infringement under the Lanham Act, 15 U.S.C. §1114(1);

B.    Defendants, their officers, directors, agents, servants, employees, successors, assigns, parents, subsidiaries, affiliated and related companies, attorneys and all those controlled by, or in active concert or participation with Defendants, be preliminarily and permanently enjoined and restrained from:

i.    using the SBA Trademarks; and

ii.    doing any other act likely to confuse, mislead or deceive others into believing that Defendants or its services are affiliated with, connected with, sponsored by, or approved by SBA;

C.    This Court enter a judgment that this is an exceptional case under 15 U.S.C. § 1117, entitling SBA to its reasonable attorneys' fees; and

D.    That this Court grant such other and further relief to SBA as the Court deems just and proper.

## COUNT IX—Federal Unfair Competition, 15 U.S.C. § 1125(a)

128.    SBA hereby repeats and incorporates by reference Paragraphs 1 through 127 as if fully restated herein.  Count IX is a claim for false designation of origin and unfair competition under the Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

129.    Defendants promote and advertise in commerce global logistics services in connection with the SBA Trademarks, that are identical or related to the services offered by SBA in connection with the SBA Trademarks.

130.    On information and belief, Defendants were aware of SBA's rights in the SBA Trademarks, and Defendants knowingly and willfully used the SBA Trademarks with the intent to trade upon the reputation and goodwill of the SBA's Trademarks.

131.    Defendants' advertisement and promotion of their global logistics services in connection with the SBA Trademarks constitutes a violation of Section 43(a) of the Lanham Act, in that Defendants are using a deliberately false designation of origin, false or misleading description of fact, or false or misleading representation of fact which is likely to cause and has caused confusion, mistake or deception as to the source, sponsorship or approval of Defendants' and SBA's respective services, and as to Defendants' affiliation, connection or association with or certification by SBA.

132.    Defendants have irreparably injured and will likely continue to injure SBA by diminishing SBA's reputation with the public and its customers, and the goodwill in the SBA Trademarks, for which SBA has no adequate remedy at law.

**WHEREFORE**, Plaintiff prays that:

A.    This Court enter a judgment in favor of SBA and against Defendants for unfair competition under the Lanham Act, 15 U.S.C. §1125(a);

26

B.    Defendants, their officers, directors, agents, servants, employees, successors, assigns, parents, subsidiaries, affiliated and related companies, attorneys and all those controlled by, or in active concert or participation with Defendants, be preliminarily and permanently enjoined and restrained from:

i.    using the SBA Trademarks; and

ii.    doing any other act likely to confuse, mislead or deceive others into believing that Defendants or its services are affiliated with, connected with, sponsored by, or approved by SBA;

C.    Defendants be required to account for and pay such damages as SBA has sustained in consequence of Defendants' infringement, unfair competition, and deceptive business practices, including, but not limited to, all gains, profits and advantages derived by Defendants from such acts, actual damages, Defendants' profits, and such other damages as determined by this Court;

D.    Defendants be Ordered to pay SBA treble damages due to the knowing and willful nature of Defendants' acts of trademark infringement and unfair competition under 15 U.S.C. § 1117;

E.    This Court enter a judgment that this is an exceptional case under 15 U.S.C. § 1117, entitling SBA to its reasonable attorneys' fees; and

F.    That this Court grant such other and further relief to SBA as the Court deems just and proper.

**COUNT X—State Law Unfair Competition - 815 ILCS 510/1 et seq.**

133.    SBA hereby repeats and incorporates by reference herein the allegations in paragraphs 1 through 132 as if fully set forth herein.  Count X is a claim for unfair competition under the Illinois Uniform Deceptive Trade Practices Act 815 ILCS 510/1 et seq.

134.    On information and belief, Defendants' aforesaid actions constitute unfair competition and deceptive trade practices in violation of the Illinois Uniform Deceptive Trade Practices Act 815 ILCS 510/2.

135.    Defendants' actions were committed knowingly and willfully, and with the intent to pass off its goods as those of SBA and to cause confusion, misunderstanding or deception as to the source, sponsorship or approval of Defendants' and SBA's respective goods and services, and as to Defendants' affiliation, connection or association with or certification by SBA.

136.    Defendants' unlawful activities described herein have caused and, unless enjoined by this Court, will continue to cause irreparable damage to SBA by diminishing SBA's reputation with the public and its customers, and the goodwill in the SBA Trademarks, for which SBA has no adequate remedy at law.

**WHEREFORE**, Plaintiff prays that:

A.    This Court enter a judgment in favor of SBA and against Defendants for unfair competition under the Illinois Uniform Deceptive Trade Practices Act 815 ILCS 510/1 et seq., ;

B.    Defendants, their officers, directors, agents, servants, employees, successors, assigns, parents, subsidiaries, affiliated and related companies, attorneys and all those controlled by, or in active concert or participation with Defendants, be preliminarily and permanently enjoined and restrained from:

28

       i.       using the SBA Trademarks; and

       ii.      doing any other act likely to confuse, mislead or deceive others into believing that Defendants or its services are affiliated with, connected with, sponsored by, or approved by SBA;

      C.      Defendants be required to account for and pay such damages as SBA has sustained in consequence of Defendants' infringement, unfair competition, and deceptive business practices, including, but not limited to, all gains, profits and advantages derived by Defendants from such acts, actual damages, Defendants' profits, and such other damages as determined by this Court;

      D.      Defendants be Ordered to pay SBA costs and attorneys' fees under 815 ILCS 510/3.

      E.      For punitive damages under the laws of the State of Illinois; and

      F.      That this Court grant such other and further relief to SBA as the Court deems just and proper.

<u>**COUNT XI—(Common Law Unfair Competition)**</u>

137.    SBA realleges and incorporates by reference herein the allegations in paragraphs 1 through 136 as if fully set forth herein. Count XI is a claim for unfair competition under the common law of Illinois.

138.    Defendants' aforesaid actions in advertising and promoting its global logistics services in connection with the SBA Trademarks, with the intent to misappropriate and trade off of the reputation and goodwill in the SBA Trademarks, constitute unfair competition under Illinois common law.

139. Upon information and belief, unless enjoined, Defendants' will continue the aforesaid conduct that has caused, and will continue to cause, irreparable injury to SBA in deliberate, willful, reckless and bad faith violation of the rights of SBA, for which SBA has no adequate remedy at law.

**WHEREFORE**, Plaintiff prays that:

A. This Court enter a judgment in favor of SBA and against Defendants for unfair competition under the common law of Illinois;

B. Defendants, their officers, directors, agents, servants, employees, successors, assigns, parents, subsidiaries, affiliated and related companies, attorneys and all those controlled by, or in active concert or participation with Defendants, be preliminarily and permanently enjoined and restrained from:

i. using the SBA Trademarks; and

ii. doing any other act likely to confuse, mislead or deceive others into believing that Defendants or its services are affiliated with, connected with, sponsored by, or approved by SBA;

C. Defendants be required to account for and pay such damages as SBA has sustained in consequence of Defendants' infringement, unfair competition, and deceptive business practices, including, but not limited to, all gains, profits and advantages derived by Defendants from such acts, actual damages, Defendants' profits, and such other damages as determined by this Court;

D. For punitive damages under the laws of the State of Illinois; and

E. That this Court grant such other and further relief to SBA as the Court deems just and proper.

30

Dated:   June 30, 2014
Chicago, Illinois

Respectfully submitted,

**SERVICE BY AIR, INC.**


By:   */s/ Alexander D. Kerr, Jr.*
                    One of Its Attorneys

Bruce L. Wald (#2919095)
Alexander D. Kerr, Jr. (#1450484)
Inez K. Tremain (#3126454)
Natalia R. Griesbach (#6278368)
**TISHLER & WALD, LTD.**
200 S. Wacker Drive, Suite 3000
Chicago, IL 60606
P:  (312) 876-3800

-AND-

Richard A. Schnurr (#6181372)
Brian J. Lum (#6256315)
**ICE MILLER LLP**
200 West Madison Street
Suite 3500
Chicago, IL 60606
P:  (312) 726-1567

## **VERIFICATION**

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in the foregoing **Verified Amended Complaint** are true and correct, except as to matters therein stated to be on information and belief, and as to such matters, the undersigned certifies as aforesaid that he/she verily believes the same to be true.

_Rosalin Poliseno_                    _Rosalin Polis_[name]

STATE OF ___NEW YORK___ )
                                          : ss
COUNTY OF ___NASSAU___ )

I, the undersigned, a Notary Public in and for the county and state aforesaid do hereby certify that the above named ___Rosalin Poliseno___, personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that he/she signed and delivered the said instrument as his/her own free and voluntary act for the uses and purposes therein set forth.

Given under my hand and notarial seal of this ___27___ day of ___JUNE___, 2014.

_Mahesh Gupta_                                              Notary Public

**MAHESH GUPTA**
**NOTARY PUBLIC-STATE OF NEW YORK**
No. 01GU6305032
Qualified in Nassau County
My Commission Expires June 02, 2018

## LIST OF EXHIBITS

Exhibit A     –     Sales Agent Agreement ("Agreement") between SBA and Phoenix

Exhibit B     –     Email with Gabay/SBA signature dated January 27, 2014

Exhibit C     –     Affidavit & Supplemental Affidavit of Marty Capuano, CFO of SBA

Exhibit D     –     Affidavit of Mike D'Iorio, SBA's IT Manager

Exhibit E     –     Radiant Press Release re: Other Acquisitions and Financial Results

Exhibit F     –     Laredo Asset Purchase Agreement

Exhibit G     –     Amended Affidavit of Ron Lynch, Vice President of Operations of SBA

Exhibit H     –     Affidavit of Cheryl Hollander

Exhibit I     –     Radiant Acquisition of Phoenix Press Release

Exhibit J     –     Email from Radiant (Lori Moyer) to Customers dated 3/3/14

Exhibit K     –     Correspondence from Radiant to Cordray Corp. dated 3/6/14

Exhibit L     –     Trademark Registration No. 4,389,059

Exhibit M     –     Trademark Registration No. 4,389,061

Exhibit N     –     Trademark Registration No. 3,616,733

Exhibit O     –     Trademark Registration No. 3,438,446

Exhibit P     –     Email from Radiant to Customers dated 6/3/14

Exhibit Q     –     Affidavit of Hann Livingston, SBA's Chief Operating Officer

Exhibit R     –     Affidavit of Rosalin Poliseno, President of SBA